NORWICH AND WORCESTER RAILROAD COMPANY *vs.* CITY OF WORCESTER.

Worcester.   October 4, 1888. — October 19, 1888.

Present : MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Change of Grade of Way — Damages — Lessor as the " Owner " of Adjoining Land — Joinder of Party — Evidence.*

The lessor of a railroad was to purchase land for any change in the road, fit it for use, and furnish the money, upon which the lessee was to pay interest, and thereupon the "new track, grounds, and buildings" so provided were to be included in the lease. Land was taken by the lessor under a statute for a new freight station and yard, which land, before it was fitted or used for railroad purposes or turned over to the lessee, was damaged by a change of grade in an adjoining street, and the lessor alone filed a petition for a jury to assess the damages. *Held,* that the petition could be maintained.

At the trial of such petition, evidence of a demand by the lessee upon the lessor to build a retaining wall rendered necessary by the change of grade was admitted *de bene,* and was not afterwards referred to by court or counsel. *Held,* that the evidence was immaterial.

PETITION to the Superior Court, under the Pub. Sts. c. 52, §§ 15, 16, for a jury to assess the damages to land, of which the petitioner was alleged to be the owner, by a change of grade in repairing Southbridge Street in Worcester. Trial in the Superior Court, before *Dewey*, J., who allowed a bill of exceptions, in substance as follows.

Evidence was introduced tending to show the following facts. The respondent lowered the grade of Southbridge Street, which was a highway, for the purpose of repairing it, by taking away an embankment in front of and adjacent to the land in question, and thereby rendered a retaining wall necessary to support the land.

On February 9, 1869, the petitioner, as party of the first part, executed to the Boston, Hartford, and Erie Railroad Company, as party of the second part, a lease, containing the following provisions, which alone are material:

" Said party of the first part hath demised, leased, and rented, and doth by these presents demise, lease, and rent, for the term of one hundred years from and after the first day of February, A. D. eighteen hundred and sixty-nine (1869), unto the said party of the second part, and its successors, all and singular, the railway of the said party of the first part, extending from a point in the city of Worcester, in Massachusetts, to Allyn's Point, so called, some miles southerly of the city of Norwich, in Connecticut, with its railway in said city of Norwich, together with all the lands on which said railway is or shall be located within said terminal points, and which are connected with the uses of said railway, and all the rights, easements, franchises, and privileges in connection therewith, or which are appurtenant thereto, and all the turn-outs, branch tracks, depot grounds, stations, depots, superstructures, erections, and fixtures used therewith and belonging thereto, and the lands and premises on which the same are situate and standing, now used and belonging, and to be used or belonging, or in any wise appertaining to said railroad, together with all and singular the real estate, tenements, hereditaments, and appurtenances of the party of the first part. . . . .

" Said party of the second part agrees that it will at all times keep and maintain said railway, in its road-bed, bridges, super-

structures, buildings, grounds, fences, and in each and all things pertaining to the same, and in everything pertaining to the rights and uses of the public connected therewith, in as good order, repair, and condition as when received, and replace and keep up all such of the fixtures, rolling stock, and furniture supplies and other property, as shall be shown by an inventory, to be taken and appended to this indenture, as shall or may wear out, or be destroyed by use, fire, flood, accident, design, or removal; so that at all times there shall be upon and connected with said leased railway all things evidenced by such inventory, in as good condition and to as full extent and amount as shown by said inventory; and such new property or renewals as afore-said shall be and stand the estate of said party of the first part, in the place and stead of any of like property worn out, destroyed, or removed. . . . .

"It is mutually stipulated, that, in case the parties hereto shall agree that any portion of the leased real estate, which shall not be needed in the operation of the railway, or that if a change of location of track and station at Worcester, or at any other place, will be best for the public and the parties hereto, said party of the first part may sell and convey such portion of said real estate, agreed upon as aforesaid, and invest the proceeds in a fund to be known as the improvement fund; and such fund may be applied to the purchase of any new or changed line, or grounds and buildings, in the place and stead of those sold; and if, by such change, or purchase, or construction of new buildings, a greater sum be required than is obtained from the sale of property as aforesaid, said party of the first part is to provide for and pay the same, by issue of new stock or otherwise; and said party of the second part shall pay ten per cent per annum on the amount of such expenditure over and above the amount of funds in the improvement fund; and the new track, grounds, and buildings shall be included under this indenture of lease, for the same time and upon the same terms and conditions that the railway is herein leased. . . . .

"Said party of the first part agrees to do all lawful corporate acts and things, upon request of said party of the second part, to enable it to make any additions to lands for the use of the demised railway, or to enable said party of the second part to

improve said railway in its curves, cuttings, embankments, or lines of sight, or depot, or other grounds."

Under the St. of 1884, c. 157, the petitioner took the land in question, which lay between its old location and Southbridge Street, as a part of a new site for a freight station and yard, and duly filed its location of the same on October 27, 1885.  The petitioner then proceeded to remove the buildings, grade the land, build a freight-house, lay tracks, and prepare the premises for station purposes, and for tracks and yard room to be used in connection therewith, including the building of the retaining wall, the work, except that on the wall, being in process at the time the grade of the street was lowered, and not completed until 1887.

The New York and New England Railroad Company, which it was agreed was the legal successor of the Boston, Hartford, and Erie Railroad Company, and owned whatever the lease conveyed, was, at the time of the lowering of Southbridge Street, in possession of and operating all the property and franchises of the petitioner under the lease, except that it did not take actual possession of the land in question until it had been completely prepared for use by the petitioner, in 1887, and after the lowering of the street, when the premises were turned over to it, as successor of the lessee.  The expense of taking and constructing the new freight station, yard, and tracks was borne by the petitioner, and was to be provided for by the issue of new stock by it, on which the New York and New England Railroad Company was to pay the same rate as rent as it paid on the existing stock, if there was an excess of expenditure over the receipts from real estate at the old location.

The petitioner offered the testimony of an agent of the New York and New England Railroad Company, that he had a conversation with an agent of the petitioner, after the work was done in the street, in which conversation the former demanded that the petitioner should build the retaining wall to protect the property.  The evidence was admitted *de bene*, against the respondent's objection, and was not again referred to by the judge or counsel.  The witness testified that he was acting for his company.

The respondent asked the judge to rule as follows: " 1. The evidence does not show the petitioner to be the owner of the

premises, in the sense of the statute, and it cannot therefore maintain the petition. 2. The evidence does not show that the petitioner has any other than a reversionary interest in the premises described, and it cannot recover any damages, except to its reversionary interest, after the expiration of the lease. 3. This petition cannot be maintained without joining the New York and New England Railroad as a party."

The judge refused so to rule, but ruled that, upon the facts stated in regard to the title of the petitioner and its occupancy of the premises, which were not disputed by either party, the petitioner was to be treated as owner of the property, within the meaning of the statute, and that its right to damages was the same as if the lease had not been given, and that it was not necessary that the New York and New England Railroad Company should be joined as a party.

The jury returned a verdict for the petitioner; and the respondent alleged exceptions.

*F. P. Goulding*, for the respondent.

*T. G. Kent & G. T. Dewey*, for the petitioner.

W. ALLEN, J. The petitioner in 1885 took certain land, under the St. of 1884, c. 157, for a new station and yard in the city of Worcester, and before the land was fitted or used for railroad purposes it was injured by reason of the lowering of the grade of an adjoining street. To this petition for damages it is objected that the petitioner had no greater interest in the land than that of lessor. In 1869 the plaintiff made a lease for one hundred years of its railroad, including the old station and yard at Worcester, to the Boston, Hartford, and Erie Railroad Company, whose successor is the New York and New England Railroad Company. After the new station buildings, tracks, and yard were completed, they were taken possession of by the New York and New England Railroad Company, and the old location was discontinued. The question is, whether the land came under the operation of the lease at the time when it was taken by the petitioner, or when it was fitted for use and taken possession of by the lessee as part of the railroad.

The lease was of the railroad of the lessor, extending from Worcester to Allyn's Point in Connecticut, " together with all the lands on which said railway is or shall be located within

said terminal points, and which are connected with the uses of said railway," and all rights and privileges connected, and all tracks, depot grounds, buildings, etc., "now used and belonging, and to be used or belonging, or in any wise appertaining to said road," etc. Another provision of the lease relates to a change of the road and station grounds in Worcester, or at any other place, and provides for the purchase of land for that purpose, and for the cost of the new line, grounds, and buildings, and that "the new track, grounds, and buildings shall be included under this indenture of lease, for the same time and upon the same terms and conditions that the railway is herein leased."

It seems clear that it was not the intention of the parties that land purchased for the construction of a new station and yard should come under the lease as soon as purchased. The lease was of a completed road, ready to be used by the lessee. The road-bed, buildings, and all the leased property, were to be maintained and kept in repair, and replaced when destroyed by the lessee; the lessee had authority to improve the road, and the lessor was bound, at the request of the lessee, to do all lawful corporate acts to enable the lessee at its expense to improve the railroad or make addition to lands. In everything except in the change of station grounds and buildings, the lessee was to be the actor and to furnish the funds; in regard to that, the lessor was to be the actor, — was to sell, with the consent of the lessee, the old, and to procure the new, and to furnish the means, from the proceeds of sales or from its own bonds, the interest on which the lessee was to pay. It was to purchase and grade the land, erect the buildings, and lay the tracks, and "the new track, grounds, and buildings," not the land when purchased, were to come under the lease.

Land purchased by the lessor, which was not connected with the road, but was intended for future use after it should be fitted and prepared, would not be land on which the road was located, and would be no part of the road. It would be land procured for the purpose of changing the road, and until the change should be made, and the new tracks put in connection with the road, it would not become a part of it. In this case the land was not purchased, but was taken, and preparations for a change of location were made, by authority and direction of the

statute.  It does not appear that it was done under the lease, or with the assent of the lessee.  The land, having been taken under the statute, was being graded and prepared for the new location and station required by the statute, when the damage was done; it was in possession of the lessor, there were no tracks or buildings upon it, and it was not connected or used with the railroad.  It remained in the possession of the lessor until the tracks, grounds, and buildings were completed, ready for use, and then "the premises were turned over" to the lessee's successor.  We are of opinion that they did not come under the operation of the lease until the possession was thus taken by the lessee, and that the rulings asked for by the respondent were properly refused.

The only other exception is to the admission of evidence that a demand to build the retaining wall was made by the lessee upon the lessor.  The exceptions state that this evidence was admitted *de bene*, and was not afterwards referred to by court or counsel.  The amount of damage claimed by the petitioner was the expense of building the wall.  We do not see how the evidence was material.  If it had been contended for the respondent, that, after the lessee had accepted the premises without the wall, the lessor had no interest in it, or that for any reason it was necessary to show a demand for the wall by the lessee, it might have been competent.  But it does not appear that any demand was necessary.  As it was, it could have had no effect unless to forestall such an argument.  It seems to have been in fact, and to have been regarded by the court, as immaterial when offered, but as something which might, in some possible aspect of the case, become material, and to have been no further regarded by any one.  It was not received as an expression of the opinion of the officer who made the demand that a wall was necessary.  It was immaterial evidence, by which the respondent was not injured.

*Exceptions overruled.*